FILED
OCT 30 2012
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| LIFE PARTNERS, INC. § <br> and § <br> ADVANCE TRUST & LIFE ESCROW § <br> SERVICES, L.T.A. § <br> *Plaintiffs* § <br> § <br> vs. § <br> § <br> NORTH AMERICAN COMPANY § <br> FOR LIFE AND HEALTH § <br> INSURANCE § <br> *Defendant.* § <br> § | **A12CV1001 LY** <br><br> Civil Action No._____ |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Plaintiffs Life Partners, Inc. ("LPI") and Advance Trust & Life Escrow Services, L.T.A. ("ATLES") submit their Original Complaint showing this Honorable Court as follows:

### PARTIES

1.

Plaintiff LPI is a duly organized Texas corporation authorized to transact business in this state whose principal place of business is 204 Woodhew Dr., Waco, TX 76712.

2.

Plaintiff ATLES is a Texas-chartered trust company whose principal place of business is 4125 West Waco Drive, Suite 200, Waco, TX 76710.

3.

Defendant North American Company for Life and Health Insurance ("North American") is a duly organized foreign corporation whose principal place of business is 4350 Westown Parkway, West Des Moines, IA 50266.

## PERSONAL JURISDICTION

4.

This Court has personal jurisdiction over Defendant because suit is being brought under 28 U.S.C. § 1332, and this statute authorizes nationwide service of process and jurisdiction. 28 U.S.C. § 1332.

## SUBJECT MATTER JURISDICTION

5.

In this action, Plaintiffs LPI and ATLES bring suit for damages in excess of $75,000.00, excluding interest and costs. Furthermore, the dispute exists between citizens of different states. Therefore, the Court has subject matter jurisdiction to hear this case under 28 U.S.C. § 1332(a).

## STATEMENT OF VENUE

6.

Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, as Plaintiffs had resided in and conducted their business in this judicial district, the actions herein alleged were directed towards Plaintiffs in this judicial district, and the damages caused by the Defendant was incurred by Plaintiffs in this judicial district.

## FACTUAL BACKGROUND

7.

Plaintiff LPI is a life settlement company. A life settlement is a transaction in which one or more purchasers acquire the life insurance policy of an insured person at a discount. When the insured dies, the purchaser(s) receive the benefits payable under the insurance policy

purchased. As a life settlement company, Plaintiff LPI acts as purchasing agent for the purchaser(s) and effectuates life settlement transactions.

8.

On or about February 12, 2007, Defendant North American issued the policy numbered LB00969380 ("the Policy") with a face value of five million dollars. (*See* Ex. A). The Policy insures the life of an individual who shall be known in this complaint as "the Insured" because of issues of confidentiality.

9.

In late 2009, the Insured's broker approached LPI to sell the Policy. As presented, the Policy contained a Custom Guarantee Rider whose purpose was to prevent it from lapsing from its issuance till the Insured reached age 100 if fixed premium payments of $286,000.00 per year were consistently paid when due. (*See* Ex. A). An in-force Custom Guarantee Rider also meant that that the Policy accrued no value which could be harvested by the policy owner if the need to discontinue coverage arose.

10.

Among the documents presented to LPI by the Insured's broker were two policy illustration forms which calculated the Policy's premiums. (*See* Ex. B). The underlying basis for the calculations in both North American-issued documents, dated July 13, 2009 and December 21, 2009, was that the Custom Guarantee Rider was in force.

11.

LPI conducted its due diligence on the validity of the Policy and the specifics with regard to its coverage. It requested that North American, as the Insured's policy issuer, verify certain information relevant to the transaction and upon which LPI and its clients would rely in the transaction. In January 2010, LPI obtained a premium history report from North American

which showed that the policy owner had made sufficient payments reflecting that the Custom Guarantee Rider should be in force. (*See* Ex. C). On February 10, 2010, North American certified several facts for the benefit of LPI and its purchasers in a document labeled Verification of Coverage For Life Insurance Policies. (*See* Ex. D). In this form completed by Jessica Stowell, North American specifically attested that the Insured's policy was supported by a Custom Guarantee Rider. Finally, in March 2010, LPI spoke with Cindy Brooks, an employee of North American, who also confirmed that the Custom Guaranteed Rider was in force. (*See* Ex. E).

12.

On or about April 7, 2010, the Insured sold and assigned the Policy to certain purchasers with LPI acting as an agent for the purchasers. Pursuant to the transaction, LPI was listed as the owner of the Policy, and it assumed all contractual rights under the Policy. LPI designated ATLES as the beneficiary to receive and distribute funds available under the Policy when it matures.

13.

Since then, LPI, on behalf of its clients, has received at least two Planned Premium Notices from North American, both of which calculated the anticipated yearly premiums assuming the Custom Guarantee Rider was in force. (*See* Ex. F).

14.

On April 12, 2012, North American mailed LPI a grace notice, requesting more funds due to alleged insufficient premiums. (*See* Ex. G). LPI contacted North American to obtain clarification on this issue, and North American informed it that the Custom Guarantee Rider upon which LPI relied in accepting and completing the Insured's life settlement transaction allegedly lapsed on November 12, 2007.

15.

In support of its assertion, North American presented LPI with a letter it allegedly mailed to the Insured on June 13, 2007 which stated that the Custom Guarantee Rider had entered its grace period as described in the contract and would lapse if a payment of $212,366.88 was not submitted by July 11, 2007. (*See* Ex. H). North American also presented LPI with another letter dated November 12, 2007 which declared the lapse/expiration of the Insured's Custom Guarantee Rider. (*See id.*)

16.

LPI pointed out that the totality of circumstances indicates that the Custom Guarantee Rider was in force at the time the Policy was settled through LPI. Specifically, as of the time the grace notice was mailed, the Insured had made payments in excess of the amount required to maintain the Custom Guarantee Rider, as calculated using the formula outlined in the Custom Guarantee Rider. (*See* Ex. A). Also, the grace period notice mailed on June 16, 2007 requested a payment of $212,366.88. However, as of the date the Custom Guarantee Rider lapse was mailed, the Insured had made $281,116.77 in premium payments, and therefore the Custom Guarantee Rider could not have lapsed at that time. (*See* Ex. H). Furthermore, according to the insurance contract, the Custom Guarantee Rider had a grace period of 61 days. Nevertheless, the letters show that the Custom Guarantee Rider lapse letter stated that the Custom Guarantee Rider lapsed on November 12, 2007, which is one hundred and twenty days after the July 16, 2007 deadline North American set for receipt of premiums in its grace period notice dated June 13, 2007.

17.

LPI has since made several requests for North American to reinstate the Policy's Custom Guarantee Rider, noting that the totality of circumstances shows that the Custom Guarantee Rider never lapsed and continues to be in force. LPI also noted that North American's representations that the Custom Guarantee Rider was in force led LPI to accept the Policy to be sold to its clients. Despite these attempts, North American has refused to reinstate the Policy's Custom Guarantee Rider.

**FIRST CAUSE OF ACTION—NEGLIGENT MISREPRESENTATION**

18.

The preceding paragraphs are incorporated herein as if fully restated.

19.

North American made several representations which were false in the course of its business.

20.

The false information was provided for the guidance of LPI and ATLES in their business.

21.

North American did not exercise reasonable care or competence in obtaining or communicating the information.

22.

LPI and ATLES suffered pecuniary loss by justifiably relying on the representations.

**SECOND CAUSE OF ACTION—FRAUD**

23.

The preceding paragraphs are incorporated herein as if fully restated.

24.

North American made material misrepresentations which were false.

25.

When the representations were made, North American and/or its agents knew they were false or made it recklessly without any knowledge of the truth and as positive assertions.

26.

North American made the representations with the intent that LPI should act upon them.

27.

LPI and ATLES acted in reliance on the representations and thereby suffered injury.

**THIRD CAUSE OF ACTION—UNFAIR OR DECEPTIVE ACT/PRACTICE**

28.

The preceding paragraphs are incorporated herein as if fully restated.

29.

North American misrepresented the terms of the Policy and the benefits or advantages promised by the Policy.

30.

North American's actions constitute an unfair or deceptive act or practice in the business of insurance under section 541.051 of the Texas Insurance Code.

**FOURTH CAUSE OF ACTION—UNFAIR OR DECEPTIVE ACT/PRACTICE**

31.

The preceding paragraphs are incorporated herein as if fully restated.

32.

North American made untrue statements of material fact regarding the Policy and/or failed to state a material fact necessary to make other statements it had made not misleading.

33.

North American's actions constitute an unfair or deceptive act or practice in the business of insurance under section 541.061 of the Texas Insurance Code.

## **PRAYER**

34.

Wherefore, Plaintiffs pray that this Court will find:

a. That Defendant North American made negligent misrepresentations to Plaintiffs LPI and ATLES, and Plaintiffs suffered pecuniary loss in the form of higher premiums because North American has deemed the Custom Guarantee Rider lapsed.

b. That Defendant North American made negligent misrepresentations to Plaintiffs LPI and ATLES, and Plaintiffs justifiably relied on the representations and suffered pecuniary loss in the form of purchasing a policy which they would otherwise have not purchased.

c. That Defendant North American committed a fraud on Plaintiffs LPI and ATLES, and Plaintiffs suffered injuries in the form higher premiums because North American has deemed the Custom Guarantee Rider lapsed.

d. That Defendant North American committed a fraud on Plaintiffs LPI and ATLES, and Plaintiffs suffered injuries in the form of purchasing a policy which they would otherwise have not purchased.

e. That Defendant's actions constitute deceptive trade practices under the Texas Insurance Code.

f. That Defendant be required to reinstate said Custom Guarantee Rider.

g. That Defendant be required to pay in damages a sum equal to the increase in premiums over the anticipated length of the Policy that is related to the lapse in the Custom Guarantee Rider.

h. That Defendant pay Plaintiffs reasonable and necessary attorneys' fees and costs of suit under section 541.152 of the Texas Insurance Code.

i. That Plaintiffs LPI and ATLES shall receive all such other and further relief to which they are justly entitled.

Respectfully Submitted,

*/s/ Stuart Smith*
Stuart Smith
State Bar No. 18685885
NAMAN, HOWELL, SMITH & LEE, PLLC
400 Austin Avenue, Suite 800
P. O. Box 1470
Waco, Texas 76703-1470
(254) 755-4100
FAX (254) 754-6331

Kwabena Offei-Danso
State Bar No. 24073348
204 Woodhew Dr.
Waco, TX 76712
(254) 751-7797 phone
(254) 751-1025 fax

ATTORNEYS FOR PLAINTIFFS LIFE PARTNERS, INC. and ADVANCE TRUST & LIFE ESCROW SERVICES, L.T.A.